## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                                        Criminal No. 15-174 (DWF/JJK)

                    Plaintiff,

v.                                                                        **MEMORANDUM**
                                                                    **OPINION AND ORDER**

Pharoo Witherspoon,

                    Defendant.

---

Pharoo Witherspoon, Defendant, *Pro se*.

Jeffrey S. Paulsen, Assistant United States Attorney, United States Attorney's Office, counsel for the Government.

---

### INTRODUCTION

This matter is before the Court on Defendant Pharoo Witherspoon's

("Witherspoon") *pro se* motion for release in light of the COVID-19 pandemic.[1]  (Doc.

No. 37 ("Motion").)  The United States of America (the "Government") opposes

---

[1]      The Court construes Witherspoon's Motion as a request for relief under both the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release").  As discussed below, the Court finds that Witherspoon's Motion fails under either analysis.  While Witherspoon also requested that the Court appoint him a public defender, the Court defers to the recommendation of this District's Compassionate Release Motions Screening Team that Witherspoon's circumstances do not rise to the level such that appointment of counsel is necessary.

Witherspoon's Motion.[2]  (Doc. No. 43.)  For the reasons discussed below, the Court respectfully denies Witherspoon's Motion.

## BACKGROUND

On October 22, 2015, Witherspoon pled guilty to one count of possession with intent to distribute approximately 165 grams of heroin in violation of 21 U.S.C. § 841(a)(1).[3]  (Doc. Nos. 23, 24.)  On February 25, 2016, this Court sentenced him to 120 months' imprisonment followed by an 8-year term of supervised released.  (Doc. Nos. 33, 35.)  Witherspoon is currently incarcerated at Rochester FMC in Minnesota.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed August 14, 2020).  According to the Bureau of Prisons ("BOP"), Witherspoon's release date is February 8, 2024.  *Id*.

Witherspoon now moves for release in light of the COVID-19 pandemic on the grounds that he suffers from atrial fibrillation.[4]  (Motion at 2; Reply at 8-9; *see also* Doc. No. 38-1 ("Medical Records").)  Witherspoon argues further that it is difficult to practice social distancing in a prison setting.  (Motion at 2.)  Moreover, he asserts that he may be susceptible to COVID-19 because of his genetic background.[5]  (Motion at 2, 5.)  He asks

---

[2]     The Court also received and considered Witherspoon's reply to the Government's opposition (Doc. No. 44 ("Reply")) and three letters of support (Doc. Nos. 39-41.)

[3]     This was Witherspoon's second federal conviction for selling drugs.  (Doc. No. 26 ¶ 41.)  In 2003, he was sentenced to 108 months for selling crack cocaine, a sentence that later was reduced to 87 months.  (*Id.*)

[4]     As discussed above, the Court construes Witherspoon's Motion as a request for relief under both the Cares Act and pursuant to pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

[5]     In support of this argument, Witherspoon lists the medical condition of several family members.  (Motion at 2, 5.)

that the Court grant him compassionate release or release him to home confinement.  (*Id.* at 2, 4, 6.*)

## DISCUSSION

### I.    The CARES Act

The First Step Act ("FSA") was enacted into law on December 21, 2018.  *See* Pub. L. No. 115-391, 132 Stat. 5194.  As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007.  *See* 18 U.S.C. § 3624(c)(1).

In its previous form, Section 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter.  18 U.S.C. § 3624(c)(2). Now, as amended, Section 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."  *Id.*; FSA § 602. Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment."  18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations.  The BOP immediately began

reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, starting with the inmates incarcerated at facilities that experienced the first COVID-19 cases (FCI Oakdale, FCI Danbury, FCI Elkton) and continuing with similarly-situated facilities to determine which inmates are suitable candidates for home confinement.  BOP Update on COVID-19 & Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last accessed August 14, 2020).

As noted above, the BOP has exclusive authority to determine the placement of prisoners.  *See* 18 U.S.C. § 3624(c)(2).  Neither the CARES Act nor the FSA alters this authority.  *See United States v. James*, Cr. No.15-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019); *see also Xiao v. La Tuna Fed. Corr. Inst*., Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Moreover, Courts have consistently held that placement questions are not reviewable.  *See*, *e.g*., 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine

[defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP."); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at *1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025, at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Howard*, Civ. No. 3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019).  Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement."  *James*, 2020 WL 1922568, at *5 (citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

In short, because release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate.  *See* 18 U.S.C. § 3624(c). Accordingly, to the extent Witherspoon seeks release to home confinement, the Court respectfully denies his Motion because it lacks the authority to consider his request.

## II.    Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by

the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also

consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are

applicable."  18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing reduction of sentences

under § 3582(c)(1)(A) asserts in relevant part that a court may reduce a defendant's term

of imprisonment after considering § 3553(a) factors if it finds that:  (1) "extraordinary

and compelling reasons warrant the reduction;" (2) "the defendant is not a danger to the

safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and

(3) "the reduction is consistent with this policy statement."[6]  USSG § 1B1.13

("Statement").  The Statement includes an application note that defines "extraordinary

and compelling reasons" as (1) medical conditions which diminish the ability of the

defendant to provide self-care in prison and from which he or she is not expected to

recover, (2) age-related deterioration, (3) family circumstances, and (4) other

extraordinary and compelling reasons that exist either separately or in combination with

the previously described categories.[7]  *Id.*

Notwithstanding, a defendant may move for a sentence reduction only after

complying with an exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A).  Specifically, a

---

[6]     While the policy statement refers only to motions filed by the BOP Director, the
Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence
reduction be "consistent with applicable policy statements issued by the Sentencing
Commission" to mean that the Statement also applies to motions filed by defendants.

[7]     The Statement cites examples of qualifying medical conditions including
metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and
advanced dementia.  (Statement.)

defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[8]  *Id.*

The record reflects that Witherspoon requested compassionate release from the warden at FMC Rochester on May 25, 2020.  (Doc. No. 37-1.)  The record does not reflect that the warden responded to his request.  Because more than 30 days have passed since Witherspoon requested release, the Court finds that his Motion is properly before the it.

Notwithstanding, after a careful review of Witherspoon's Motion and supporting exhibits, including his Medical Records, the Court finds that Witherspoon's circumstances fail to present an extraordinary or compelling reason to warrant release. While Witherspoon suffers from atrial fibrillation and has concern that he may be susceptible to COVID-19 based on his genetic background, the Centers for Disease Control and Prevention ("CDC") does not advise that these issues increase a person's risk for severe illness if that person contracts COVID-19.[9]

---

[8]     While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[9]     *See* CDC, People of Any Age with Underlying Medical Conditions *revised* July 30, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2

The Court also understands that Witherspoon feels susceptible to COVID-19 because he is in a prison setting.  Notwithstanding, this Court agrees with others that a generalized fear is insufficiently extraordinary or compelling to warrant immediate release.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).  As discussed above, Witherspoon cites no underlying medical condition cited by the Centers for Disease Control that increases his risk of severe illness should he contract the virus.  Moreover, the Court observes that just two staff members at FMC Rochester and zero inmates have tested positive for COVID-19 and both have recovered.[10]  BOP: COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed August 14, 2020).  Accordingly, the Court finds no indication that FMC Rochester will be unable to handle an outbreak or accommodate Witherspoon's specific concerns.[11]

---

F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed August 14, 2020).

[10]     Witherspoon contends that that the BOP has failed to accurately report the extent of the virus in its facilities, that there are likely more cases of COVID-19 at FMC Rochester, and that "the BOP cannot guarantee this Court that [Witherspoon] will not contract the COVID-19."  (Reply at 8.)  The Court recognizes Witherspoon's concerns; however, as discussed above, the Court finds that a generalized fear is an insufficiently extraordinary or compelling reason to warrant release.

[11]     Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system."  *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_COVID-19.jsp (last accessed August 14, 2020).  Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates.  (*Id.*) Current measures also include a 14-day isolation period, and limited group gatherings. *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan Phase V,

While the Court understands the gravity of the COVID-19 pandemic and is mindful of Witherspoon's concerns, the Court finds that the circumstances do not present an extraordinary and compelling reason to warrant release. Accordingly, the Court respectfully denies Witherspoon's Motion.[12]

## CONCLUSION

For the reasons set forth above, the Court finds that it lacks authority to consider Witherspoon's Motion under the CARES Act because the decision of where to place a defendant is solely within the BOP's discretion to dictate. The Court also finds that Witherspoon is ineligible for Compassionate Release because he has not demonstrated an extraordinary and compelling reason to warrant release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Pharoo Witherspoon's *pro se* Motion for Release (Doc. Nos. [37]) is respectfully **DENIED**.


Date:  August 18, 2020                             s/Donovan W. Frank
                                                   DONOVAN W. FRANK
                                                   United States District Judge

---

https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last accessed August 14, 2020).

[12]     Because Witherspoon fails to present an "extraordinary and compelling" reason to warrant release, the Court need not consider the § 3553(a) factors or whether he poses danger to the safety of any other person or to the community.  *See* 18 U.S.C. § 3582(c)(1)(A); Statement.